■ CHARLES K. SORENSEN, SR., Individually and as Administrator of the Estate of CHARLES K. SORENSEN, JR., Deceased, Respondent, v DENNY NASH, INC., Doing Business as THE

SILVER DOLLAR, Appellant, et al., Defendant. [671 NYS2d 559] —Carpinello, J. Appeal from an order of the Supreme Court (Harris, J.), entered January 14, 1997 in Albany County, which denied a motion by defendant Denny Nash, Inc. for summary judgment dismissing the complaint against it.

On December 5, 1987 at approximately 3:15 A.M., Charles Slater struck three pedestrians, including plaintiff's decedent, while driving his vehicle over the Green Island Bridge in the Village of Green Island, Albany County.* Plaintiff commenced this action against the owners of two taverns, the Silver Dollar and Suzie's Web, at which Slater had been drinking alcoholic beverages prior to the accident. As relevant here, plaintiff claims that defendant Denny Nash, Inc., doing business as The Silver Dollar (hereinafter defendant), served Slater alcohol in violation of Alcoholic Beverage Control Law § 65 and General Obligations Law § 11-101 (the Dram Shop Act). Supreme Court's denial of defendant's motion for summary judgment prompted this appeal.

The record discloses that after work on the evening of December 4, 1987, Slater accompanied his wife and Debra Pallela to the home of Mary Beth De Chiro and Thomas Linen. He remained there for approximately two hours (from 8:30 P.M. to 10:30 P.M.), during which time it is claimed that he consumed two slices of pizza and two seven-ounce bottles of beer. From 10:45 P.M to 12:00 A.M., Slater, his wife and Pallela were at the Silver Dollar where it is claimed that Slater consumed three quarters of a 12-ounce beer and one half of a vodka and orange juice drink. He then went home until 1:15 A.M., at which time he proceeded by himself to Suzie's Web where he remained until 2:40 A.M. The accident occurred shortly after Slater left a local sub shop where he ate several sandwiches.

In order to establish liability against defendant, plaintiff was required to prove that the Silver Dollar sold alcohol to Slater while he was "visibly intoxicated" (Alcoholic Beverage Control Law § 65 [2]; *see, e.g., Donato v McLaughlin*, 195 AD2d 685, 686). In support of its motion, defendant tendered affidavits and testimony from Slater's criminal trial which, if unrebutted, were sufficient to establish that Slater was not visibly intoxicated when served at the Silver Dollar. Slater's wife, Pallela, De Chiro and Linen each testified that Slater was sober while at the De Chiro-Linen residence that evening (*see, Ryan v Big Z Corp.*, 210 AD2d 649, 651 [lay witnesses are competent to

---

* Slater was subsequently convicted of driving while intoxicated and criminally negligent homicide (*see, People v Slater*, 166 AD2d 828, *lv denied* 76 NY2d 1024).

express an opinion as to whether an individual was intoxicated]). Moreover, Slater's wife, Pallela, the Silver Dollar bartender who served Slater and an off-duty police officer who encountered him at the Silver Dollar further established that Slater was not visibly intoxicated at any time during the one hour and 15 minutes he spent at that bar. Consequently, the burden shifted to plaintiff to submit evidence demonstrating the existence of a material question of fact (*see*, *Meizinger v Akin*, 192 AD2d 1011, 1012, *lv denied* 82 NY2d 661).

In opposition, plaintiff submitted no direct proof of Slater's intoxicated demeanor at the Silver Dollar. In the absence of same, the issue is whether plaintiff submitted sufficient circumstantial evidence to establish Slater's visible intoxication during the time period that he patronized that bar (*see*, *Romano v Stanley*, 90 NY2d 444, 450). Here, as in *Romano v Stanley* (*supra*), plaintiff relied primarily upon the affidavit of a forensic pathologist, Jeffrey Hubbard. The affidavit of the forensic pathologist, even viewed in the most favorable light to plaintiff, is insufficient to raise a question as to whether Slater was visibly intoxicated between 10:45 P.M. and 12:00 A.M.

Hubbard's opinion that Slater must have been intoxicated and exhibited signs of same at the Silver Dollar is based upon evidence that Slater was visibly intoxicated shortly after the accident and that his blood alcohol level was 0.16% at approximately 5:30 A.M. It is beyond cavil, however, that proof of a high alcohol count in an individual served alcohol does not, without more, provide a sound basis for drawing inferences about that person's appearance or demeanor (*see*, *id.*, at 450-451; *see also*, *Adamy v Ziriakus*, 231 AD2d 80, 86, *lv granted* 91 NY2d 805). Nor, in our opinion, does proof that Slater demonstrated visible signs of intoxication at 3:15 A.M., after patronizing Suzie's Web, provide a sound basis for drawing inferences about his appearance or demeanor three hours earlier at the Silver Dollar.

Hubbard's affidavit contains no references to any purported expertise or familiarity with the study of the visible signs of intoxication. Rather, he merely opines, without specific scientific or statistical support, that Slater appeared more intoxicated at the Silver Dollar than at 3:15 "because the visible signs of intoxication displayed by a person will correspond to the amount of alcohol in the bloodstream" and, according to him, his blood alcohol level must have been between 0.17% and 0.33% while at the Silver Dollar based upon the rate of elimination of alcohol from the body. It is well established, however, that the effects of alcohol consumption, as well as alcohol toler-

ance, may differ in significant respects from one individual to another (*see, Romano v Stanley*, 90 NY2d 444, 450, *supra*; *Senn v Scudieri*, 165 AD2d 346, 350; *Burnell v La Fountain*, 6 AD2d 586, 590).

Moreover, although Hubbard claims that his conclusions are based on "certain" scientific rates, studies and data, notably absent is any identification of such studies or data. Rather, these references are nonspecific and vague and unaccompanied by any evidence establishing their reliability (*see, Romano v Stanley, supra*, at 452). Nor has Hubbard established that his professional experience as a physician specializing in forensic pathology suffices to support an inference that he is qualified to render an opinion correlating Slater's blood alcohol content to *visible signs* of intoxication (*see, id.*).

In short, Hubbard does no more than infer that because Slater consumed a certain amount of alcohol throughout the evening and early morning hours and exhibited signs of intoxication at 3:15 A.M., he must have been intoxicated during a time period three hours before and, more importantly, appeared so. Because he failed to impart sufficient information from which the validity of these conclusions could be inferred, his conclusions are of no probative value and insufficient to defeat defendant's motion for summary judgment (*see, id.*).

Cardona, P. J., Mikoll, Mercure and White, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendant Denny Nash, Inc. and complaint and all cross claims dismissed against it.